UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA SHERRY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HORTONWORKS, INC., ROB BEARDEN, PAUL CORMIER, PETER FENTON, MARTIN FINK, KEVIN KLAUSMEYER, JAY ROSSITER, and MIKE VOLPI,<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Barbara Sherry ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.  This is a class action brought by Plaintiff on behalf of herself and the other stockholders of Hortonworks, Inc. ("Hortonworks" or the "Company"), except Defendants (defined below) and their affiliates, against Hortonworks and the members of Hortonworks' board of trustees (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of Hortonworks by Cloudera, Inc. ("Cloudera").

2.  On October 3, 2018, by and among Hortonworks, Cloudera, and Surf Merger Corporation, a wholly owned subsidiary of Cloudera ("Merger Sub"), entered into an Agreement

1

and Plan of Merger and Reorganization (the "Merger Agreement"), pursuant to which Merger Sub will merge with and into the Company and, as a result, the Company will become a wholly owned subsidiary of Cloudera (the "Proposed Transaction").

3. Pursuant to the terms of the Merger Agreement, each share of Hortonworks, other than shares of Hortonworks common stock owned by Cloudera, Merger Sub, or the Company, or by any direct or indirect wholly owned subsidiary of Cloudera, Merger Sub, or the Company, will be converted into the right to receive 1.305 shares (the "Merger Consideration").

4. On November 16, 2018, the Board authorized the filing of a materially incomplete and misleading Form S-4/A Amended Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. While Defendants are touting the fairness of the Merger Consideration to the Company's stockholders in the Proxy, they have failed to disclose material information that is necessary for stockholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the Proxy incomplete and misleading.  Specifically, the Proxy contains materially incomplete and misleading information concerning the valuation analyses performed by the Company's financial advisor, Qatalyst Partners LP ("Qatalyst Partners") to, in support of its fairness opinion.

6. It is imperative that the material information omitted from the Proxy is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

7. For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the stockholder vote on the Proposed Transaction

and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Hortonworks stockholders, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10. Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Hortonworks' common stock trades on the Nasdaq stock exchange, which is headquartered in this District, which renders venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.     Plaintiff is, and has been at all relevant times, the owner of Hortonworks common stock and held such stock since prior to the wrongs complained of herein.

12.     Defendant Hortonworks is a Delaware corporation with its principal executive offices located at 5470 Great America Parkway, Santa Clara, California 95054.  The Company is a recognized leader in open-source global data management solutions so that customers can deploy modern data architectures and realize the full value of their data.  Hortonworks common stock is listed on Nasdaq under the ticker symbol "HDP."

13.     Defendant Rob Bearden is, and has been at all relevant times, a director of the Hortonworks, and currently serves as the Company's Chief Executive Officer.

14.     Defendant Paul Cormier is, and has been at all relevant times, a director of the Hortonworks.

15.     Defendant Peter Fenton is, and has been at all relevant times, a director of the Hortonworks.

16.     Defendant Martin Fink is, and has been at all relevant times, a director of the Hortonworks.

17.     Defendant Kevin Klausmeyer is, and has been at all relevant times, a director of the Hortonworks.

18.     Defendant Jay Rossiter is, and has been at all relevant times, a director of the Hortonworks.

19.     Defendant Mike Volpi is, and has been at all relevant times, a director of the Hortonworks.

20.     The parties identified in paragraphs 13 through 19 are collectively referred to as the "Individual Defendants" and/or the "Board," and together with Hortonworks, the "Defendants."

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action on her own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Hortonworks common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

22.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of November 1, 2018, Hortonworks had approximately 83.59 million shares of common stock outstanding held by hundreds to thousands of individuals and entities. The actual number of public stockholders of Hortonworks will be ascertained through discovery;

(b)     The holders of these shares are believed to be geographically dispersed through the United States;

(c)     There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

  i.  whether Defendants have violated Section 14(a) of the Exchange Act and/or SEC Rule 14a-9 promulgated thereunder;

  ii. whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    iii. whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Transaction based on the materially incomplete and misleading Proxy;

 (d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

 (e) The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

 (f) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**I. Background of the Company and the Proposed Transaction**

23. Hortonworks is a recognized leader in open-source global data management solutions so that customers can deploy modern data architectures and realize the full value of their data. The Company's enterprise-ready solutions enable organizations to govern, secure, and manage data of any kind, wherever it is located, and turn it into actionable intelligence that will help them transform their businesses. Hortonworks' platforms allow enterprises to manage their data on a global scale, whether it is data-in-motion or data-at-rest. Hortonworks has the expertise, experience and proven solutions to power modern data applications, including streaming analytics, data science, artificial intelligence, and more.

24. Cloudera empowers organizations to become data-driven enterprises. Cloudera has developed the modern platform for machine learning and analytics, optimized for the cloud. Cloudera collaborates extensively with the global open source community, continuously innovates in data management technologies and leverages the latest advances in infrastructure including the public cloud for "big data" applications.

25. On October 3, 2018, Hortonworks issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

**Cloudera and Hortonworks Announce Merger to Create World's Leading Next Generation Data Platform and Deliver Industry's First Enterprise Data Cloud**

*Establishes a superior unified platform and clear industry standard from the Edge to AI*

*Strategic combination accelerates market development, fuels innovation and produces substantial benefit for customers, partners and community*

PALO ALTO, Calif. & SANTA CLARA, Calif.--(BUSINESS WIRE)--Oct. 3, 2018-- Cloudera, Inc. (NYSE:CLDR) and Hortonworks, Inc. (Nasdaq:HDP) jointly announced today that they have entered into a definitive agreement under which the companies will combine in an all-stock merger of equals. The transaction, which has been unanimously approved by the Boards of Directors of both companies, will create the world's leading next generation data platform provider, spanning multi-cloud, on-premises and the Edge. The combination establishes the industry standard for hybrid cloud data management, accelerating customer adoption, community development and partner engagement.

This press release features multimedia. View the full release here: https://www.businesswire.com/news/home/20181003005869/en/

Tom Reilly, chief executive officer at Cloudera, stated, "Our businesses are highly complementary and strategic. By bringing together Hortonworks' investments in end-to-end data management with Cloudera's investments in data warehousing and machine learning, we will deliver the industry's first enterprise data cloud from the Edge to AI. This vision will enable our companies to

7

advance our shared commitment to customer success in their pursuit of digital transformation."

"This compelling merger will create value for our respective stockholders and allow customers, partners, employees and the open source community to benefit from the enhanced offerings, larger scale and improved cost competitiveness inherent in this combination," said Rob Bearden, chief executive officer of Hortonworks. "Together, we are well positioned to continue growing and competing in the streaming and IoT, data management, data warehousing, machine learning/AI and hybrid cloud markets. Importantly, we will be able to offer a broader set of offerings that will enable our customers to capitalize on the value of their data."

Under the terms of the transaction agreement, Cloudera stockholders will own approximately 60% of the equity of the combined company and Hortonworks stockholders will own approximately 40%. Hortonworks stockholders will receive 1.305 common shares of Cloudera for each share of Hortonworks stock owned, which is based on the 10-day average exchange ratio of the two companies' prices through October 1, 2018. The companies have a combined fully-diluted equity value of $5.2 billion based on closing prices on October 2, 2018.

**Transaction Highlights**

Establishes the next generation data platform leader with increased scale and resources to deliver the industry's first enterprise data cloud, providing the ease of use and elasticity of the public cloud from the data center, to the Edge and everywhere in between

Creates a superior unified platform and clear industry standard from the Edge to AI, substantially benefiting customers, partners and the community

Accelerates market development and fuels innovation in IoT, streaming, data warehouse, hybrid cloud, machine learning/AI
Expands market opportunity with complementary offerings, including Hortonworks DataFlow and Cloudera Data Science Workbench

Enhances partnerships with public cloud vendors and systems integrators

Expected to generate significant financial benefits and improved margin profile:

        Approximately $720 million in revenue

        More than 2,500 customers

        More than 800 customers over $100,000 ARR

        More than 120 customers over $1 million ARR

        More than $125 million in annual cost synergies

        More than $150 million cash flow in CY20

        Over $500 million cash, no debt

26. The Merger Consideration the Company's stockholders stands to receive if the Proposed Transaction is consummated is unfair and excessive because, among other things, the intrinsic value of the Dover Downs is materially in excess of the amount offered given the Company's prospects for future growth and earnings.

## II. The Proxy Is Materially Incomplete and Misleading

27. On November 16, 2018, the Board authorized the filing of the Proxy with the SEC in connection with the Proposed Transaction. The Proxy solicits the Company's stockholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's stockholders to cast an informed vote regarding Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

28. The Proxy describes Qatalyst Partners' fairness opinion and the various valuation analyses performed in support of their opinion. However, the description of Qatalyst Partners' fairness opinion and analyses fails to include key inputs and assumptions underlying the analyses.

Without this information, as described below, Hortonworks' stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Qatalyst Partners' fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Hortonworks' common stockholders.

29. With respect to Qatalyst Partners' *DCF Analysis—Hortonworks Standalone*, the Proxy fails to disclose the following key components used in their analyses: (i) the inputs and assumptions underlying the calculation of the discount rates ranging from 10.5% to 14%; (ii) Hortonworks' terminal values; (iii) the inputs and assumptions underlying the calculation of the enterprise value to next-twelve-months multiples of 20x to 30x; (iv) the net cash balance of Hortonworks as of December 31, 2018; (v) Hortonworks' net operating losses ("NOLs") as of December 31, 2022; (vi) the number of fully-diluted shares of common stock of Hortonworks as of December 31, 2022; (vii) the final net present value per share of Hortonworks common stock as of December 31, 2018 calculated in the analysis. *See* Proxy at 84-85.

30. With respect to Qatalyst Partners' *DCF Analysis—NewCo*, the Proxy fails to disclose the following key components used in their analyses: (i) the inputs and assumptions underlying the calculation of the discount rates ranging from 11.5 to 13%; (ii) NewCo's terminal values; (iii) the inputs and assumptions underlying the calculation of the enterprise value to next-twelve-months multiples of 20x to 30x; (iv) the net cash balance of NewCo as of December 31, 2018; (v) NewCo's NOLs as of December 31, 2022; (vi) the number of fully-diluted shares of common stock of NewCo as of December 31, 2022; and (vii) the final net present value per share of NewCo common stock as of December 31, 2018 calculated in the analysis. *See* Proxy at 85.

31. These key inputs are material to Hortonworks stockholders, and their omission

renders the summary of the Qatalyst Partners' discounted cash flow ("DCF") analyses incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.*

*Id.* at 1577-78 (emphasis added).

32.     Without the above-mentioned information, Hortonworks stockholders cannot evaluate for themselves the reliability of Qatalyst Partners' DCF analyses, make a meaningful determination of whether the final net present values per share of Hortonworks and NewCo reflect the true value of Hortonworks and NewCo or were the results of Qatalyst Partners' unreasonable judgment, and make an informed decision regarding whether to vote their shares in the Proposed Transaction.

33.     Similarly, with respect to Qatalyst Partners' *Future Trading Analysis – Hortonworks Standalone*, the Proxy fails to disclose the following key components used in their analyses: (i) the inputs and assumptions underlying the calculation of the fully-diluted equity value to estimated next-calendar-year levered free cash flow range of multiples of 20x to 30x; (ii) the number of fully-diluted shares of common stock of Hortonworks; (iii) the ongoing issuance of equity awards throughout the calendar years 2020 through 2023; (iv) the inputs and assumptions underlying the calculation of the discount rate of 13%; and (v) the final illustrative per share future value of Hortonworks common calculated in the analysis.  *See* Proxy at 86.

34.     Similarly, with respect to Qatalyst Partners' *Future Trading Analysis – NewCo*, the Proxy fails to disclose the following key components used in their analyses: (i) the inputs and assumptions underlying the calculation of the fully-diluted equity value to estimated next-calendar-year levered free cash flow range of multiples of 20x to 30x; (ii) the number of fully-diluted shares of common stock of NewCo; (iii) the ongoing issuance of equity awards throughout the calendar years 2020 through 2023; (iv) the inputs and assumptions underlying the calculation of the discount rate of 12.5%; and (v) the final illustrative per share future value of NewCo common calculated in the analysis.  *See* Proxy at 86.

35.     In sum, the omission the of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to cast a fully-informed vote in favor of the Proposed Transaction, and are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

# COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act**

36.  Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.  Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

38.  Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39.  The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

40.  Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding the valuation analyses performed by Qatalyst Partners in support of its fairness opinion.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, as officers and/or trustees, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42. Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger. Indeed, the Proxy states that Qatalyst Partners reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Qatalyst Partners, as well as their fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review Qatalyst Partners' analyses in connection with their receipt of their fairness opinion, question Qatalyst Partners as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43. Each and all of the Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of the Company's strategic alternatives.

44. Hortonworks is also deemed negligent as a result of the Individual Defendants negligence in preparing and reviewing the Proxy.

45. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and will deprive them of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the stockholder vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Hortonworks within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as trustees of Hortonworks, and participation in and/or awareness of the Hortonworks' operations

and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Hortonworks, including the content and dissemination of the statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Hortonworks, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

50. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

53. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and/or permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.	Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 27, 2018				**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*